ADMINISTRATIVE BOARD OF THE MUNICIPAL PIER OF PONCE, Plaintiff and Appellee, *v.* P. R. AMERICAN SUGAR REFINERY, INC., Defendant and Appellant. THE SAME, Plaintiff and Appellee, *v.* SUCESIÓN J. SERRALLÉS, Defendant and Appellant. THE SAME, Plaintiff and Appellee, *v.* DESTILERÍA SERRALLÉS, INC., Defendant and Appellant.

Nos. 9699, 9700, 9701. Argued March 10, 1949.—
Decided July 26, 1949.

Francisco Parra Capó, Vicente Zayas Pizarro, Orlando J. Antonsanti, and Leopoldo Tormes García for appellants. Erasto Arjona Siaca for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The three complaints filed in the above-entitled cases are substantially drafted in identical terms. The complaint in the first case avers, in brief, the following: That the plaintiff is a Board created by an ordinance of the extinct Executive Council of Puerto Rico with authority to operate and maintain a pier in the Municipality of Ponce and with powers similar to an ordinary commercial corporation and afterwards defined as a public service company by Act No. 70 of 1917; that since March 25, 1933 up to June 2, 1940, both dates inclusive, the defendant shipped on different dates and by different vessels which were docked at the pier of the Municipality of Ponce, using the warehouse, loading, and unloading services of said pier, merchandise for which it had to pay the plaintiff after the services were rendered, loading charges in the sum of $52,599.42, having only paid $3,953.57 and owing the net amount of $48,645.85, which the defendant has refused to pay to the plaintiff, in spite of the fact that said amount is due and that it has been demanded to do so; and that the shipments of merchandise covered by the $48,645.85 owed were not reported by the defendant to the plaintiff, notwithstanding the fact that the former had, dur-

ing all the time alleged, a permanent representative in the building located within the Municipal Pier of Ponce; for which reason said shipments were not entered and registered in the accounting books of the Municipal Pier of Ponce and the plaintiff Board was not aware of the lack of such payment until October 3, 1941, by verification and search from sources other than the Board.

Under similar allegations, in the second case the sum of $1,477.50, is claimed from Sucesión J. Serrallés, and in the third, the sum of $2,502.66 is claimed from Destilería Serrallés, Inc.

After the defendants requested and the plaintiff furnished several bills of particulars, the defendants filed two amended answers denying the essential averments of the complaint and alleging as special defenses that the plaintiff has no capacity to sue; that the plaintiff is estopped from claiming the amount mentioned in the complaints, since at all times, it had kept in the position of Superintendent of the Municipal Pier of Ponce, a person with authority to order and attend to everything in said pier, and especially to receive the shipment for the defendants and of all the public, to ship the cargo and render all the services for which said pier was established, to receive the payment which for those services the defendants were bound to make in accordance with the tariffs established in said pier; that the defendants had paid for the services which the Municipal Pier of Ponce had rendered to them in the period mentioned in the complaint about $300,000, without the plaintiff, or any other person, prior to April 1942, date on which the complaints were filed, having made a claim to the defendants on account of the services rendered to them by said municipal pier, inasmuch as it was the established custom and usage in said municipal pier for the public and for the persons who used it oftener, to transact and pay for the services rendered to them to the Superintendent of the pier, Rafael Torruella Cortada, a duly

appointed agent of the plaintiff to direct the activities of said pier; and that if it should appear that the Superintendent of the Municipal Pier of Ponce had not been authorized to collect for the services which said municipal pier had rendered, the plaintiff is estopped to deny the authority of its agent since said plaintiff had not notified the defendants of the revocation or limitation of the authority of said Superintendent. They also alleged that the actions brought against each of them was barred and that the respective complaints did not state facts sufficient to constitute a cause of action.[1]

The cases were jointly heard at a trial which extended for many days and in which the parties introduced numerous witnesses and abundant documentary evidence. Subsequently, the court rendered judgment for the plaintiff and against the defendants adjudging the P. R. American Sugar Refinery, Inc. to pay to the plaintiff the sum of $40,650 with costs, and $4,000 as attorney's fees; Sucesión J. Serrallés to pay $1,476,62 with costs and $150 as attorney's fees; Destilería Serrallés, Inc. to pay $2,264.23 with costs and $250 as attorney's fees.[2] From those judgments the defendants appealed, the cases being jointly heard by us similarly as in the lower court.

Fourteen errors are assigned by the defendants to the lower court. We do not deem it necessary to discuss them together or separately. If the first three and the fifth [3] errors

---

[1] The answers of the three defendants are drafted *mutatis mutandis* in identical form.

[2] Of the total sum claimed from the defendants, the lower court held that inasmuch as said defendants had paid to the plaintiff the sum of $8,235.22 (sic) that the following deductions should be made as follows: $7,995.85 to the P. R. American Sugar Refinery, Inc., $0.88 to Sucesión J. Serrallés and $230.43 to Destilería Serrallés, Inc.

[3] Errors 1, 2, 3, and 5 are in brief: that the District Court of Ponce erred in overruling (1) the demurrer for lack of capacity of the plaintiff; (2) the demurrer for nonjoinder of parties plaintiff; (3) demurrer for insufficiency of the causes of action; (5) the motion of the defendants requesting that the Auditor of Puerto Rico present the reports submitted by the account examiner Justo Nieves Torres and in refusing to admit the same as evidence.

were sustained, they would merely cause the reversal of the judgments and the dismissal of the complaints for lack of capacity or the reversal of the judgments and, consequently, the remanding of the case to the lower court for further proceedings. The litigation would not come to an end and nothing would be gained by it. The fourth error refers to a motion for nonsuit which was denied. We rather prefer to amply discuss the assignments which are directed to the merits of the proceedings. These are errors six to thirteen, wherein it is contended that the District Court of Ponce erred (6) in holding that only with documentary evidence it could be authentically established that the disbursements made by the defendants reached the hands of the Administrative Board of the Pier of Ponce through an agent authorized to receive them; (7) in holding that the procedure of payment started by the defendants was interrupted when the disbursements reached the hands of its agent, Avelino González, and that the documentary evidence of the defendants failed to show that the procedure of payment was completed by delivery to the officer or agent authorized by the plaintiff; (8) in ignoring the corroborated and uncontroverted oral evidence of the defendants on the ground that according to it, said evidence was not supported by any document; (9) in weighing the evidence and according credit to the witnesses for the defendants and in deciding as a question of law, that since some of the witnesses were employees of the defendants their testimony did not merit credence; (10) in weighing the evidence in the sense that the accounting of the plaintiff was sufficiently clear to disclose the amounts paid for the services of the pier; (11) in holding that the defendants had not paid to an authorized officer or agent of the plaintiff the sum claimed, and in holding that the superintendent of the pier, Rafael Torruella Cortada, was not authorized to collect for services rendered by the pier; (12) in weighing the evidence in connection with the fact of whether or not certain agreement reached

by the plaintiff was not notified to the defendants; and (13) in holding that the defendants should have made such payments by checks and not in cash.

Since the foregoing errors in substance attack the weighing of the evidence by the lower court, a summary thereof is imperative. The oral and documentary evidence, as we have already indicated, is indeed abundant. Therefore, we shall set it forth briefly and fully omitting the testimony of those witnesses who contribute little or nothing to the solution of the real problem before us.

## Evidence for the Plaintiff.

*Justo Nieves Torres* is an account examiner of the office of the Auditor of Puerto Rico, and as such he examined the account books of the Administrative Board of the Municipal Pier of Ponce and also those of the Capitanía del Puerto de Ponce, of the different shipping companies, of Sucesión J. Serrallés, of Carlos Armstrong e Hijos, of Porto Rico Iron Works, of Ulises Petrili and of other firms, finding that certain amounts of money for services rendered by the Municipal Pier of Ponce did not appear recorded in the cashbook of said pier. He also examined the books of the shipping office of Sucn. J. Serrallés, which are kept by F. Avelino González, as well as the cash vouchers and the cashbook of said Sucesión. This investigation took him about one year. It was one of a general character in which he examined all the transactions of the Municipal Pier of Ponce during a certain period. Part of the total sum on certain invoices marked as Exhibits Z–1 to Z–192 appeared as recorded. Due to the irregularities found by him in the accounting system of the pier, no complaint was filed against the defendants, but it was so filed against other persons. He found that there were differences, that were not recorded, in connection with the defendants as well as in connection with several other firms, even though with regard to the latter

the amount of money involved was not so great as the former. The most important shipper on the pier was the firm Serrallés. Among the firms regarding which there were also irregularities were the West India Oil Company, Shell Company, Carlos Armstrong e Hijos, Joaquín Pou, and Ulises Pretili. From 1933 to 1940 there appear recorded in the cashbooks of the Municipal Pier of Ponce about $265,000, as shipping charges paid by the defendants. The only information in connection with the shipping movement in the pier appears from the cashbooks kept in the municipal pier itself. There only appeared four or five small books which contain some data regarding certain shipments made through the pier, but during the greatest part of said period he failed to find in the course of the investigation records of the shipments made. These were the only books delivered to him, and he was told that there were no others. The evidence for which he was looking was difficult to obtain, since at the pier the things were not kept in order and he had to search all that from other sources. The pay rolls of the pier appeared certified by the Superintendent and by the timekeeper. At that time the Superintendent was Rafael Torruella Cortada and the timekeeper, Santos González. Before resorting to the account books of the defendants he made a list of all the payments which, for shipping charges appeared recorded in the cashbooks of the Municipal Pier of Ponce. Afterwards he took note at the shipping company of the shipments made by the defendants by said pier and then he computed the charges. Once the difference which did not appear recorded in the cashbooks of the pier was obtained, he went to the defendants to investigate the difference. He had no difficulty in obtaining the defendants' books and no objection was raised by them. Defendants' books disclosed the weekly expenses of the shipping office of the Sucesión and each voucher showed the payment to F. Avelino González of the total of the expenses recorded by him on

the book, and it was stated in each voucher that they covered expenses of the office at the Playa. There are several checks issued by the defendants in favor of González, endorsed by the latter in blank and later endorsed, also in blank, by Rafael Torruella Cortada, which were not covered into the funds of the -Pier of Ponce. He found in the hands of the defendants a certain number of invoices of the Pier of Ponce with the signature of Rafael Torruella Cortada and others without such signature. The amounts which appeared as disbursements made by each one of the defendants for the concepts set forth in Exhibits Z–1 to Z–192 appear in the cashbooks of the Sucesión J. Serrallés and in the corresponding books of each one of the other defendants. The shipping department in the pier was under the charge of F. Avelino González and the transactions entered in the books of the defendants corresponded to the vouchers which he examined, and the books had no erasures, alterations, or any such thing. The defendants accounting system is good. He would characterize the accounting system of the Municipal Pier of Ponce with regard to that part covered by his investigation as very deficient. He failed to find in the pier any ledger covering that period and it should have been logically kept because during all that time there was a position of bookkeeper for the pier. All that was kept in the books of the pier was an account where the daily remittances made to the municipality and the disbursement vouchers submitted for payments were recorded. There was only kept a "control account" without any more details. He failed to find any other book in the pier showing that there was kept a cash account duly registered and kept. Prior to January 4, 1935, he did not find any record of the entrance and departure of vessels. (The plaintiff admits that during the years in controversy the defendants paid for pier services $260,000, for invoices and shipments, but contends that this has nothing to do with what they have failed to pay.) In

the cashbook of the pier there was not specified the manner in which payments were made, whether by checks or in cash. The sum of certain invoices presented to him totals $1,958.18, which is the amount of a check issued by the defendants to the order of F. Avelino González for the latter to pay the loading charges to the pier of Ponce. According to the indorsements that check appears as having been cashed by Rafael Torruella, who was at that time Superintendent of the pier. From the amount of that check there appears recorded only $225.74, $3.41, $55, and $72.27 and certain invoices for $1,290 and $537.50 appeared unpaid. He testified in identical terms in connection with other checks and funds not accounted for. When he was asked if the conclusion reached by him as a result of the report submitted by him "was that all those shipping charges were collected and not accounted for" the witness answered that he reached that conclusion due to the investigation he made; that he refers to all the invoices presented by plaintiff's attorney in the direct examination and to their total value. He has no direct physical knowledge thereof, but that the conclusion is the result of the investigation he made. When he examined the books of Sucesión J. Serrallés he found that the latter had disbursed those moneys in favor of Avelino González in the majority of cases and others in favor of Antonio Soto so that they would pay to the pier the invoices covering this amount of fifty-two thousand six-hundred and odd dollars. Once he verified therein that said moneys reached the hands of those gentlemen to be paid to the pier, he inquired those gentlemen and they assured him that they had made the payment. When Torruella was examined with respect to those checks he abstained from testifying and, therefore, he reached the prima facie conclusion that those amounts were delivered to Torruella and that they had not been covered into the treasury of the municipal pier. Consequently, he arrived at the conclusion that those moneys were collected and not ac-

counted for, and that he so stated. The manner in which the defendants made the payments for pier services was not the best one, since the amounts were not disbursed directly in favor of the creditor. Modern accounting advises that any payment of a considerable sum be made by check directly in favor of the creditor. The records of the pier show that the defendants had leased premises therein. During the period covered by this investigation, that is, from 1933 to 1940 there was recorded in the pier books about $265,000 as loading charges paid by the defendants. Eight thousand and odd dollars paid by checks, which appeared as not paid by the defendants nor accounted for by the plaintiff, were actually received by the latter. Among the invoices which appeared paid and which amounted to $265,000 there were many signed by Rafael Torruella, Superintendent of the Municipal Pier of Ponce. Others appeared without any signature. Some companies paid by check for the services rendered by the municipal pier and in spite thereof, the corresponding amounts were not accounted fro either. Among those checks there were some of the West India Oil Company and of the Shell Company, drawn in favor of the pier which were collected by Torruella and which did not appear entered in the cashbooks of said pier. Among the minutes, papers, books, or documents of the Municipality of Ponce and of the Administrative Board of the Pier, he failed to find any document showing that the agreement adopted on September 30, 1932 by the Board in connection with the accounting regulations and with the person to whom payments for the services rendered by the pier of Ponce should be made were notified in any form in spite of the fact that he searched for such documents.

*Juan Cabrer* is a merchant and on October 14, 1932, he took charge of his duties as member of the Administrative Board of the Pier of Ponce. When the minutes of the prior session were read, he heard about some accounting regula-

tions unanimously approved by the Board on September 30
last. In his presence Attorney F. Manuel Toro, at that time
Chairman of the Board, telephoned Pedro Juan Serrallés and
he recalls that the conversation specifically dealt with the fact
that payments should not be made to the Manager of the
Pier, who at that time was Torruella. If he had had knowl-
edge of the collections that were annually made in the pier
of Ponce he would not have resigned. He requested informa-
tion from the manager regarding those payments and it was
never furnished, or when information was given to him it
was never satisfactory. The cashier was the only person
who could collect or pay.

EVIDENCE FOR THE DEFENDANTS

*F. Manuel Toro* is an attorney and notary and for several
times was Chairman of the Administrative Board of the
Municipal Pier of Ponce, as well as member thereof on some
occasions. During the years 1932 and 1933, he was Chair-
man of the Board and he does not recall having notified any-
body of the regulations which said Board adopted on Sep-
tember 30, 1932. He had telephone and personal conversa-
tions with the Directors of the defendants, but he did
not tell them anything regarding the fact that accord-
ing to said regulations the cashier of the pier was the
only person authorized to receive payments. That he has
not taken up with Pedro Juan Serrallés, neither on October
14, 1932, nor on any other day, any matter in connection with
the pier. He does not recall having made such thing. What
he recalls is that the regulations adopted by the Board were
not notified. It was a mistake, but it was not done. That
agreement was reached by the Board for the purpose of
preventing Torruella from collecting, paying, or indorsing
checks but the Board did not know from whom Torruella
collected nor to whom were the checks indorsed.

*Federico Avelino González* is shipping agent of the office
of the defendants in the Playa de Ponce. He keeps a book

of all the weekly expenses of the companies, which he represents. The one shown to him begins on July 1, 1939 and ends on January 14, 1935. He dealt with Torruella on all matters concerning the loading and unloading of merchandise on the municipal pier, since Torruella was the only person in charge of the loading and unloading of ships. The amount collected as charges for the use of the pier by reason of the shipments made by the defendants he always paid to Rafael Torruella, inasmuch as he considered that Torruella was the person authorized to receive them. The witness was a shipping agent during 8½ years, since its inauguration and collected for services rendered. Victor Ramos was also shipping agent and also collected; Ernesto Ruiz is a shipping agent now and also has collected for those services. Rafael Torruella was the superintendent and they paid to him. At no time was he informed either verbally or in writing, that Torruella could not receive payments. The practice followed was that the defendants issued checks to him for the total amount to be paid, that said checks were indorsed to Torruella or that "in the cash register of the Sucesión itself the check was changed and the weekly amount owed to the pier for the services rendered by it was given in cash to Torruella." When money was delivered in cash to Torruella, this was publicly done in the office of the Sucesión in the presence of everybody. The witness never failed to pay, he always paid on Fridays to Rafael Torruella in the Central Mercedita. (The plaintiff admits that this witness would testify that the services for each one of the items listed in the bill of particulars of the cases were paid by him to Torruella as Superintendent of the Municipal Pier of Ponce.) It was at the outset of 1941 that the Administrator of the Sucesión J. Serrallés gave the witness instructions to make no more payments in the future to the Superintendent of the pier. He also paid the shipping companies in the same manner as he did to Torruella for the services

of the pier and none of those companies has made any claim to the defendants.   Cross-examined whether he had knowledge of the existence of any special agreement by which the payments made to Torruella, without the latter issuing any receipt, would be handed back to the defendants to cover a political debt of Pedro Juan Serrallés, one of the principal co-owners thereof, the witness answered in the negative.

*Antonio Soto Alvarez* is an employee of the defendants since 1922 and works within the pier, his boss being F. Avelino González.   A check presented to him was delivered to him to pay the pier charges and he in turn delivered it to Torruella Cortada in the cashier window of the Central Mercedita to pay certain invoices, and that the signature of Torruella Cortada appears as indorsing the check.   (It was stipulated by the parties that if the witness continued to testify, he would testify in similar terms as he had up to now regarding certain vouchers.)

*Martín Rodríguez* was Torruella's chauffeur.   They went out in the morning and he saw that the latter visited several commercial firms of Ponce, among them, Bonin, Cortada, and Porto Rico Iron Works and that usually he entered to collect money of the pier.   Several times Torruella came out with money in cash and other times with checks.   Later they went to the bank and Torruella deposited the money. Torruella usually visited Central Mercedita on Saturday mornings or on Fridays.   He saw that Torruella entered the payment office and received money.   If Torruella was paid much money he put it in a bag and on different occasions he gave it to him to keep it in the automobile.   Torruella received money from Avelino González at the Central Mercedita.   He saw that this happened from 1936 to 1940.

*Marcial Hernández* has been cashier of Central Mercedita during eighteen years and is acquainted with Torruella Cortada as well as with Avelino González.   The office of Serrallés at the Playa, which was under the charge of Ave-

lino González, usually sent on Saturdays a weekly pay roll. The amount of that pay roll was delivered by the witness to González in cash, after the same had been checked and approved by the Auditor of the Central. González then delivered to Torruella the charges to be paid for services rendered by the municipal pier to Sucesión J. Serrallés and to the other defendant companies. The payment was usually made to Torruella in cash.

*Fausto Percy* is a commercial schoolteacher and a certified public accountant. From January 11, 1933 up to the first week of January 1937, he was treasurer and school director of the Municipality of Ponce. The accounting of the pier was kept in the pier itself and not in the municipal treasury and all payments were made directly to Torruella Cortada, Superintendent of the pier.

*Luis Ferré* is an engineer, vicepresident and treasurer of the Porto Rico Iron Works. Two checks were shown to him and he testified that they were issued by the Porto Rico Iron Works against the National City Bank and against Banco de Ponce, respectively, and in favor of the Municipal Pier for services rendered. Both checks are indorsed by Rafael Torruella. He was never aware of the fact that the latter was not authorized to collect payments, and no communication was ever received in the office of the Porto Rico Iron Works from the Administrative Board of the Pier notifying them that Torruella was not authorized to make collections.

*Pedro Juan Bonnin* is a managing partner of the firm Bonnin & Company. A check was shown to him and he testified that it was from the partnership of which he is a member, and that it was paid by Banco de Ponce to the municipal pier. Said check was endorsed by Torruella and he was never acquainted with the fact that the latter had not been authorized to make collections in representation of the pier. The check was issued in favor of the pier and not to the order of Torruella.

*Guillermo Cortada* is a member of the firm Ramón Cortada & Company. A check was shown to him from the partnership and he testified that it was issued in favor of the pier of Ponce. This check was indorsed by Torruella as Superintendent of the pier. He was never acquainted with the fact that Torruella had not been authorized to make collections.

*Guillermo Hoyos* works as clerk in the War Department. During the years from 1937 to 1941 he was treasurer and school director of the Municipality of Ponce. He was never aware of the fact that Torruella, as Superintendent of the Ponce pier, was not authorized to sign checks issued in favor of said pier.

*Aurelio Miranda Rivera* is a corporal of the Insular Police and rendered services in the ward of Sabanetas, where Central Mercedita is located, during five years. He accompanied the paymaster of the Central, Marcial Hernández, to draw money out of the Banco de Ponce, and upon returning therein, Hernández gave the money to Avelino González who delivered it to Rafael Torruella. This usually occurred on Fridays or Saturdays.

*Juan Bautista Toro* is an insular policeman and rendered service in the Central Mercedita during fifteen years. He was acquainted with Rafael Torruella as Superintendent of the Municipal Pier of Ponce. (His testimony is similar to that of the preceding witness.)

*Juan Luis Boscio* is a merchant in Ponce. During the years 1933 to 1940 he was engaged in the same business which he now has. His firm was an important client of the municipal pier. In many occasions Torruella Cortada, as Superintendent, collected from him for the services rendered by the pier. The witness was also a member of the Administrative Board of the Pier of Ponce.

*Rafael Fourquet* is a merchant and works with Monllor & Boscio, Sucrs. In numerous occasions Torruella Cortada

brought him the vouchers for services rendered by the pier and he paid them by check in favor of the Pier of Ponce. He was never aware of the fact that Torruella was not author-ized to collect for the shipping services.

It was then stipulated by the parties that if Jaime Sa-licrup of the firm Carlos Armstrong e Hijos, Sucrs; Rafael Torres, of Sucrs. de Trujillo & Subiñá; Joaquín Pou and Ra-miro Colón of Cafeteros de Puerto Rico, testified, they would do so in a manner similar to that of Luis Ferré, Guillermo Cortada, and Pedro Juan Bonnin, but stating that those wit-nesses would testify that the payments were made by checks.

*Ana Flores* was the cashier of the Municipality of Ponce and worked under the supervision of Fausto Percy and Gui-llermo Hoyos. Rafael Torruella Cortada was Superinten-dent of the Pier of Ponce and delivered to her the remit-tances from the pier to the municipality, both in checks and in cash. She was never acquainted with the fact that To-rruella could not sign checks issued in favor of the Municipal Pier of Ponce.

*Justo Nieves Torres* (who had already testified exten-sively as witness for the plaintiff) testified that according to the investigation made by him, there were payments made by checks in favor of the Municipal Pier of Ponce, the amount of which was not recorded in the cashbook of the Municipal Pier or covered into the funds of the Municipality of Ponce and that those checks were cashed by Rafael Torruella.

*James M. Giles* has been administrator of the Sucesión J. Serrallés since 1919, as well as manager of the refinery. The Sucesión is the one that pays for the freight, loading, and other expenses of the merchandise taken to the pier. The shipments are controlled by the same employee in the pier. When he arrived at the Central Mercedita he found that the system used was to pay to the Superintendent of the Pier. In 1940 he continued paying to the Superintendent. In 1941 they received a letter from the Secretary of the Administrative Board informing them that thereafter they

should pay by check in favor of the Board, of the cashier of the Board or of the Municipality of Ponce. Prior to the month of January 1941, he received no notification whatsoever in connection with the agreement reached by the Board of the Pier on September 30, 1932, to the effect that Torruella was not authorized to collect the pier charges. Torruella went many times to the office of the Central Mercedita and alleged that he needed cash on that same day to pay the workmen and he gave it to him. During the years that Avelino González has been acting as representative of the shipping office of the Sucesión J. Serrallés, the Sucesión has never had any case, besides the present one, in which a claim has been made because González had failed to pay. That is all the evidence.

██ In innumerable occasions we have held that the weighing of the evidence by the lower court shall not be disturbed by us unless we are convinced that in such weighing said court committed manifest error or acted under the influence of passion, prejudice or partiality. *Asencio v. Am. Railroad Co.*, 66 P.R.R. 218; *Jiménez v. Fletcher*, 67 P.R.R. 153, 155; *Ex Parte Detres*, 67 P.R.R. 355; *Ramos v. Rosario*, 67 P.R.R. 641, 648; *González v. Vélez*, 68 P.R.R. 835, 837; *Camacho v. Cía. Popular de Transporte*, 69 P.R.R. 675, 680. However, the instant case is one in which we have been fully convinced that such manifest error in the weighing of the evidence was committed. The reversal of the judgments is imperative. The thorough and careful study that we have made of both the oral and documentary evidence introduced by the parties, leads us to that conclusion. Let us see once more and briefly the evidence introduced:

The principal witness for the plaintiff, Justo Nieves Torres, made a thorough and detailed investigation of the accounting books of the Administrative Board of the Municipal Pier of Ponce. He found that the accounting system used therein was very deficient. The money claimed was received and not recorded in the pier books. This happened

not only with the money paid by the defendants but also with the money paid by several other firms which used the services of the pier of the plaintiff and which made payments by checks. He also examined the accounting books of the defendants and those of the shipping companies and of other firms of the locality. Contrary to what happened with the plaintiff, the accounting of the defendants was good although the better practice advises that considerable amounts of money should be paid by checks and not in cash. The conclusion reached by him as a result of the investigation he made was that each and every invoice claimed by the plaintiff was paid by the defendants. The other witness for the plaintiff was Juan Cabrer, who testified only in connection with the alleged telephone conversation between Attorney Toro and one of the officers of the defendants.

The evidence for the defendants, both oral and documentory, was abundant. It tended to show and did show, in our judgment, that all the sums claimed by the plaintiff had been paid by its employees Federico Avelino González and Antonio Soto to Rafael Torruella Cortada, Superintendent of the Municipal Pier of Ponce during the years in question; that Torruella Cortada was authorized to receive such payments; that the usual practice was to issue checks in favor of Avelino González or his assistant Antonio Soto, for the necessary amounts to cover the payments which the defendants' offices in the pier had to make, including the payments for pier services; that Torruella Cortada went frequently to the office of the defendants in the Central Mercedita and requested that he be paid in cash for the services of the pier and that such payments were made to him almost weekly; that Torruella Cortada was frequently paid by checks, the checks being issued by the defendants to the order of Avelino González indorsed by the latter in blank, and subsequently indorsed and collected by Torruella; that during the years in question the defendants paid for the services rendered by the pier a total amount in excess of $300,000, that is, the $265,000

which appeared recorded in the books of the Pier of the Municipality and also the sums claimed herein, the $265,000 having been paid, as well as the total sums in controversy herein, in cash or by checks.

During the course of the trial the plaintiff assumed alternative positions. Its main contention was that the defendants had never paid the sums claimed. While it cross-examined the witnesses for the defendants it assumed the position that Torruella Cortada had received the payments of the amounts not recorded in the books with the understanding that the amount thereof would be returned to the defendants to pay a political debt contracted by Pedro Juan Serrallés, one of the principal members of the defendants. And finally, that if Torruella received payments from the defendants for the services rendered by the pier, he was not authorized to receive or to bind the plaintiff by its receipt, and his failure to enter them in the pier books or into the municipal treasury. Its main contention was not proved. On the contrary, it was overcome by the testimony of its star witness. The position that the payments were received by Torruella and returned to the defendants to support the political standing of one of its main officers lacked direct evidence and was fully denied by the defendants' witnesses. And that Torruella, as Superintendent of the Pier had no authority to collect for the services rendered by the pier, falls of its own weight. As it has been seen, during the years in controversy the plaintiff collected from the defendants through Torruella not less than $265,000, which were recorded in the books of the pier and covered into the funds of the municipality. It is illogical to contend that Torruella, as Superintendent of the Pier, was empowered to collect the sums which were actually received by the municipality and that such payments are good and valid, and on the other hand, that the plaintiff Board is not bound by the receipt issued by Torruella, in his above capacity, of other sums that

the latter did not record in the books of the plaintiff or of the municipality.

Moreover, the defendants showed not only with the testimony of Attorney F. Manuel Toro, but with that of many others, that the agreement adopted by the Administrative Board of the Pier on September 30, 1932, was never notified to the defendants or to other firms which used the services of the pier. Also that the total sum claimed had already been paid. There is nothing which prevents a party or its employees to testify at the trial. Section 38 of the Law of Evidence. Nor is there any reason that for that sole ground their testimony be rejected. *Otero & Núñez* v. *Succrs. of Pérez*, 46 P.R.R. 4; *Buxeda* v. *Escalera*, 47 P.R.R. 610; *People* v. *López*, 48 P.R.R. 10; *Sabalier* v. *Iglesias et al.*, 34 P.R.R. 338; and *Suc. of Collazo etc.* v. *Rivera Esbrí et al.*, 26 P.R.R. 240. It is true that Avelino González, Antonio Soto, Marcial Hernández, James M. Giles, and Juan Bautista Toro were employees of the defendants but that of itself does not mean that their testimony did not merit credence or that documentary evidence was indispensable to prove the payments. Their testimony was corroborated by other witnesses and was in harmony with the conclusion reached by Justo Nieves Torres, main witness for the plaintiff. It was also in harmony with the books of the defendants and said defendants as it was admitted, were using a good accounting system. The thorough and careful study which we have made of all the evidence, we repeat, strengthens our view that the lower court committed manifest error in weighing the evidence.

Due to the conclusion reached it is unnecessary to discuss the fourteenth error assigned. This is that the lower court erred in adjudging the defendants to pay attorney's fees.

The judgments appealed from should be reversed and the complaints dismissed with costs on the plaintiff.